## PLANING COMPANY VS. PAXSON.

Where the delivery of a deed is sought to be presumed from an intention to deliver it, the evidence of the intention must be clear.

Error to Common Pleas No. 2 of Philadelphia. No. 243, January Term, 1880.

This is an amicable action to determine whether or not a mechanic's lien, filed by plaintiffs against certain houses, upon

3 Wa 7

which the defendant had mortgages, is entitled to priority, in the proceeds of a Sheriff's sale, to that part of the mortgages which was given to secure advance moneys. The plaintiffs base their claim upon the fact that work was commenced upon the buildings prior to the recording of the mortgages. The controversy arose in the following manner:

In the fall of 1876 the defendant and Thomas T. Elwell made an agreement, whereby the said Elwell was to purchase of defendant a certain triangular lot of ground, situate in the Twenty-third Ward of the City of Philadelphia; to divide the same into sixteen smaller lots and erect upon each a three-story brick house, and to secure the defendant for the amount of purchase money and the total amount of moneys to be advanced by defendant towards the erection of said houses, by first mortgages upon each house and small lot for the sum of $2,000, of which $927.86 7-16 was for purchase money, and $1,072.13 9-16 was for advances thereafter to be made. This building agreement, the deed for said large lot, and said mortgages are all dated November 6, 1876, and were all recorded December 6, 1876.

The plaintiffs, having furnished the lumber for use in said houses, on the 4th December, 1877, filed their lien against the same for the total sum of $3,987.87, the value of the material furnished.

On January 26, 1878, the defendant obtained judgment in foreclosure of said mortgages, and on March 4, 1878, the said sixteen houses and lots were sold at Sheriff's sale to defendant for the sum of $1,800 each. The Sheriff having made a special return of said sale, to enable the defendant to receipt for the purchase money as a lien creditor, the plaintiffs were about to file exceptions thereto, in order to contest with the defendant the said claim of priority to the advance money part of said mortgages, when the defendant offered and gave his bond in the sum of $8,000, conditioned for the payment of all money found to be due plaintiff upon the trial of this question. On April 13, 1878, an amicable action in debt was brought upon said bond.

On the trial, the plaintiffs, after giving in evidence the bond upon which suit is brought, the said building agreement, deed,

and mortgages, recited in the bond, called Thomas T. Elwell, the purchaser and mortgagor, who testified that the said deed and mortgages were delivered on Friday, December 1, 1876; that Mr. Yardly, who had drawn the papers, and to whom he was referred by the defendant, as having entire charge of the matter on his behalf, then told the witness that all was right and to go ahead with the work; that the deed was left with Mr. Yardley at his request, and upon his saying he would have the papers all recorded and taken care of; that on the following Monday, December 4, 1876, he (Elwell) with a number of his employees, commenced digging the cellars; that the plaintiffs had furnished the lumber for the sixteen houses and the bill attached to their lien was correct.

The defendant's evidence was to the effect that the deed had been delivered to Mr. Yardley, to be held by him until Elwell should provide certain security, etc., or, as the defendant himself testified, till Mr. Yardley "was satisfied everything was all right."

The Court being of the opinion that there was "no evidence of the delivery of the deed prior to December 6, 1876," directed the jury to find a verdict for the defendant, which was accordingly so done.

---

The Planing Company then took a writ of error, complaining of the action of the Court in directing a verdict.

*Messrs. Williams* and *Shapley*, for plaintiff in error argued that a formal delivery is not necessary; Goodright vs. Straphan, 1 Cowper, 201; Verplank vs. Sherry, 12 Johns Rep, 536; Rigler vs. Cloud, 14 Pa., 361; Stephens vs. Rinehart, 72 Pa., 434; Blight vs. Schenck, 10 Pa., 285; Steel vs. Tuttle, 15 S. & R., 210; Lesher vs. Levan, 2 Dall, 96; Long vs. Ramsey, 1 S. & R., 72; Diehl vs. Emig, 65 Pa., 320; Dayton vs. Newman, 19 Pa., 194; Warnick vs. Grosholz, 3 Gr., 234; Hoopes vs· Garver, 15 Pa., 517; Maynes vs. Atwater, 88 Pa., 496. The case should go to the jury if there is any evidence; Hamsher vs. Kline, 57 Pa., 397; Express Co. vs. Wile, 64 Pa., 201; Railroad Co. vs. Heil, 5 W. N. C., 91. Mechanics' liens take preference to any claim subsequent to the commencement of the building, Act June 16, 1836, P. Laws, 698, Sect. 10; The

commencement of a building is the first work openly done on the ground; Am. Fire Ins. vs. Pringle, 2 S. & R., 138. They also cited Prutzman vs. Bushong, 83 Pa., 526; Parrish's Appeal, 83 Pa., 111; Campbell's Appeal, 36 Pa., 247.

*F. E. Brewster and F. Carroll Brewster, Esqs., contra*, argued that the doctrine that where there is a scintilla of evidence the case must be submitted to the jury is exploded; Cauffman vs. Long, 82 Pa., 72; Railroad Co. vs. Shay, 82 Pa., 198; Raby vs. Cell, 85 Pa., 80.

The Supreme Court affirmed the judgment of the Common Pleas on January 31st, 1881, in the following opinion, per,

GREEN, J.

The only question in this case is whether the Court below was in error in charging the jury that there was no evidence of the delivery of the deed from defendant to Elwell prior to Dec. 6th, 1876. It is true that Elwell did testify in his examination in chief, that the deed was delivered on Dec. 1st, 1876. But immediately upon his cross-examination, the whole force of that testimony was taken away by his saying : "The deed was not in my actual possession until after it was recorded. * * * * I had not possession of the deed any time prior to Dec. 6, 1876. * * * * I did not obtain possession of the deed until after Dec. 6, 1876." The deed was recorded on Dec. 6, 1876, and, of course, from that time, there would be an inference of delivery. No other witness was examined to prove an *actual* delivery before Dec. 6, 1876, but it is argued that from certain other testimony, a delivery might have been inferred by the jury, and therefore the case should have been left to them. The allegation is that the deed had been left with Yardley by both grantor and grantee, and that Yardly was, by the consent of the grantor, to deliver the deed whenever he was satisfied that everything was right, and further, that Yardley told Elwell on Dec. 1, 1876, that every thing was right and he should go ahead with the work. The contention is, that where there is an intent on the part of the grantor to deliver, a manual tradition of the corpus of the instrument is not neccessary. This is certainly sound doctrine. Facts and circumstances may be given in evidence to prove

such an intent, and it is the province of the jury to judge of the sufficiency of the testimony in such cases. But the intent must really exist, and the evidence of it must be found in the facts and circumstances, and if not there found, they are incompetent as a means of proof, and, in any given case, where such is the state of the testimony, it is the duty of the Court to say so. It easily follows in the present case, that we are at once remitted to a consideration of the particular facts and circumstances relied upon, as evincing an intent to deliver. The entire contention of the plaintiff, apart from the testimony, we have already considered, is founded upon a single sentence in the testimony of Elwell, as follows: "On December 1, 1876, Mr. Yardley told me it was all right, and to go ahead with the work. This it is argued is more than a *scintilla*, and therefore the case should have gone to the jury. Is that position correct? That depends upon the meaning of the language, and the connecting circumstances. What is its meaning? What is it that was all right? These words alone do not furnish the answer. They do not refer to any deed. But it is an intent to deliver a deed that we are considering. Hence it is absolutely necessary that we resort to the other evidence to understand just what it was that the witness was saying. The preceding sentence in his testimony is as follows: "I fix the time of the delivery of the deed on December 1, 1876, because I made an advance on that day to the amount of $80. It was Friday, December 1st, 1876; I saw Judge Paxson about that time. He referred me to Mr. Yardley, who, he said, had charge of the whole matter." Then follow the words above quoted. It is plain that we still require the help of other testimony to understand the meaning of the words in question. What deed was it? from whom? to whom? for what property? what was its date? what were the circumstances attending its execution? how, when and by whom was it to be delivered? what are the circumstances which are claimed to amount to a delivery? All these questions must be answered before it is possible to determine the meaning of the words of the witness, or the correctness of the charge of the Court. The whole testimony in the case was before the Court when the portion of the charge assigned for error was delivered. In substance the

transaction was this.   Judge Paxson had made a building agreement with  Thomas T. Elwell, in writing, by which he contracted to sell to Elwell a large lot of ground for $14,845.83, for which he was to make a sufficient conveyance.   He also agreed to advance Elwell $17,154.17 in addition to assisting him in erecting certain buildings on the lot, and Elwell · agreed to secure the payment of the whole amount, by giving upon the execution of the conveyance, sixteen bonds and warrants of attorney, and mortgages, when Mr. Elwell had done what it was agreed he should do ; he was to furnish security which would be approved by Judge Paxson; in the meantime papers were left in my hands till that was done, and also Mr. Elwell was to furnish me a certificate from the district surveyor that no work had been done or materials furnished on the premises."   It is perfectly manifest from this entirely uncontradicted testimony that Judge Paxson never intended the deed to be delivered, and never authorized Yardley to deliver it, until he was satisfied by competent proof that no work had been done on the ground.   Now it is argued that when Elwell said Yardley told him on Dec. 1, 1876, it was all right, and he should go ahead with the work, he (Yardley) meant it was all right as to the *delivery of the deed.* The witness does not pretend to say so, for he says nothing about the deed, and nothing to the effect the deed was a subject of conversation between him and Yardley.   There is an entire absence of the necessary explanation by the witness, to make the declaration of Yardley applicable to the deed.   But it is impossible that Yardley could have used the expression in the sense contended for, for another reason.   The surveyor's certificate that no work had been done or material furnished was not given until Dec. 5th.   That is the day it bears date. Yardley testified and was not at all contradicted, as follows : "On December 5th, 1876 he (Elwell) came to my office with that certificate ; said he was going to break ground to-morrow, December 6, and put a force of men on the work ; I said, "not so fast ; we must deliver the papers and place them on record ; that he must not do any work the next day, and he promised me he would not, nor have the materials furnished."   As it is perfectly clear, both from the date of the surveyor's certificate

and the foregoing testimony that the proof of no work done or materials delivered was not furnished until December 5, it is utterly impossible that Yardley could have meant to say four days before that on Dec. 1st that this proof had been already furnished; or to have used the words "it is all right" in any such sense. The conclusion is irresistible that Elwell was mistaken as to the date when Yardley used the expression, or that if he did use it, it was in reference to some other matter than the delivery of the title papers. In these circumstances, this testimony of Elwell was not even a scintilla of evidence to prove delivery, and if it had been allowed to go to the jury, and they had found a verdict upon it, the Court would have been obliged to set aside the verdict. That Elwell's act of going on the premises, and doing some work on Dec. 4, was entirely unauthorized was fully proved by his own testimony. He said: "The lot was entirely vacant; Judge Paxson never delivered to me possession of it at any time, nor did Mr. Yardley nor any person. I simply went to the vacant lot and commenced digging. I took possession myself, without any delivery of possession by any one." We are therefore of opinion, that the learned Judge of the Court below was entirely right in saying to the jury there was no evidence of the delivery of the deed prior to Dec. 6, 1876, and in directing a verdict for the defendant.

Judgment affirmed.